# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-CA-00868-SCT

*PRICELINE.COM, LLC, PRICELINE.COM INCORPORATED n/k/a BOOKING HOLDINGS, INC., TRAVELWEB LLC, TRIP NETWORK, INC. d/b/a CHEAPTICKETS.COM, ORBITZ, LLC, HOTELS.COM, L.P., EXPEDIA, INC., HOTWIRE, INC., TVL LP f/ka TRAVELOCITY.COM LP, SITE59.COM, LLC*

*v.*

*LYNN FITCH, ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI EX REL. STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/12/2021 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| TRIAL COURT ATTORNEYS: | DAVID McMULLAN, JR. |
| | GEORGE W. NEVILLE |
| | MEREDITH McCOLLUM ALDRIDGE |
| | TA'SHIA S. GORDON |
| | JOHN C. HENEGAN |
| | MARGARET CUPPLES |
| | BLAIR HARDEN JUSSELY |
| | MICHAEL BENTLEY |
| | BRIAN S. STAGNER |
| | ANNE MARIE SEIBEL |
| | JEFFREY A. ROSSMAN |
| | JOEL PAUL VARNER |
| | JOHN W. CRONGEYER |
| | DON BARRETT |
| | WILLIAM Q. BIRD |
| | ALEXANDRIA E. SEAY |
| | ROBERT K. FINNELL |
| | MARY JO WOODS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |

ATTORNEYS FOR APPELLANTS:      KYLE V. MILLER
                               ANNE MARIE SEIBEL
                               TIFFANY DEGRUY
                               MARGARET CUPPLES
                               MICHAEL BENTLEY
                               SCOTT R. WIEHLE
                               JEFFREY A. ROSSMAN
ATTORNEYS FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY:  HART MARTIN
                                    JUSTIN L. MATHENY
                               JOHN W. CRONGEYER
                               DON BARRETT
                               DAVID McMULLAN, JR.
                               SARAH STERLING ALDRIDGE
                               ROBERT K. FINNEL
                               WILLIAM Q. BIRD
                               ALEXANDRIA E. SEAY
NATURE OF THE CASE:             CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION:                    REVERSED AND RENDERED - 09/28/2023
MOTION FOR REHEARING FILED:

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     This case hinges on whether Online Travel Companies (OTCs) are encompassed by the definition of *hotels* found in Mississippi Code Section 41-49-3 (Rev. 2023) and are therefore subject to the tax levied against hotels in Mississippi Code Section 27-65-23 (Rev. 2017). The chancery court found that the tax was a broad transaction tax that encompassed the OTCs. The chancery court granted partial summary judgment in favor of the State on the issue of liability, rendering the OTCs liable for more than $10 million in past due taxes. The trial court further found that the OTCs had acted willfully and knowingly and in intentional disregard and assessed penalties and interest for a total judgment of more than $50 million.

2

This Court finds that the OTCs are not *hotels* as contemplated by Section 41-49-3. Therefore, this Court reverses the trial court's grant of partial summary judgment in favor of the State on the issue of liability and renders judgment in favor of the OTCs.

**FACTS AND PROCEDURAL HISTORY**

¶2.    Priceline.com, LLC, Priceline.com Inc. N/K/A Booking Holdings, Inc., Travelweb LLC, Trip Network, Inc. D/B/A Cheaptickets.com, Orbitz, LLC, Hotels.com, L.P., Expedia, Inc., Hotwire, Inc., TVL LP F/K/A Travelocity.com LP, and Site59.com, LLC (collectively, the OTCs) are technology companies that operate "websites that enable travelers to research destinations, comparison shop, plan trips, and request reservations from airlines, hotels, and rental car companies." The OTCs have been subject to nationwide litigation by states and local governments for their alleged underpayment of taxes.

¶3.    The OTCs provide their services primarily through two business models: the merchant model and the agency model.[1] Merchant model transactions are at issue in this case. In merchant model transactions, the OTC acts as the merchant of record and "facilitates the booking of hotel rooms, airline seats, car rentals and destination services" from the travel suppliers. The OTCs facilitate reservations for consumers at lower rates (called "net rates") than hotels advertise to the public.[2] When facilitating reservations, the merchant model

---

[1]In agency model transactions, the OTC "acts as the agent in the transaction and passes reservations booked by its customers to the relevant airline, hotel, car rental company or cruise line." The supplier sets the retail price paid by the consumer, and the OTC generally receives a commission from the travel supplier for its services.

[2]2002 Expedia, Inc., Form 10-K ("Under the merchant model, we receive inventory (hotel rooms . . .) from suppliers at negotiated rates."); 2000 Expedia, Inc., Form 10-K ("Merchant transactions for Expedia include the sale of negotiated rate hotel rooms . . . .");

3

allows the OTCs to have latitude to establish the prices charged to consumers (as compared to agency transactions) and enables the OTCs to achieve a higher level of net revenues per transaction.

¶4.     Under the merchant model, when a consumer books a room through an OTC, the OTC charges the consumer's credit card at the time the hotel issues a reservation. There are two line items for the displayed charges. The first is a "Nightly Rate" or "Room Rate" that consists of: 1) the hotel's charge for the room (the "net rate") plus 2) the OTCs "margin" or "facilitation fee" for facilitating the reservation. The second line is labeled "taxes and fees" or "tax recovery charge and service fees" and consists of: 1) a "tax recovery charge" to cover the estimated taxes the hotel will owe on its net rate plus 2) a "processing service fee" that the OTC retains as compensation for processing the reservations through its system. The service fee charged by the OTC and the tax recovery charge are not specifically itemized to the consumer but are presented as a combined amount. The OTCs state that this amount is displayed to the consumer as combined in order "to maintain the confidentiality of the hotel's net rate, which is required under the contracts between the OTCs and the hotels."

¶5.     The tax recovery charge is calculated by multiplying the applicable tax rate by the hotel's net rate. The contractual agreements between the hotels and the OTCs provide that the OTCs will collect the amounts for applicable taxes from the consumers. If the consumer does not cancel the reservation, the hotel later collects from the OTC the net rate and taxes

---

2013 Orbitz Worldwide, Inc., Form 10-K ("We have agreements with suppliers that provide our customers the ability to book their supply (for example, air tickets or hotel rooms) that we sell through our sites.").

on the net rate and remits to the appropriate tax authorities taxes owed on the net rate.

¶6.     In a small number of transactions, called "breakage" transactions, the total amount that the OTC expected to forward to the hotel does not match the total amount actually collected by the hotel. Therefore, the OTC sometimes retains a portion of the net rate or tax recovery charge. Reasons why breakage transactions occur are:

> In some instances, the OTC may have paid hotels in lump sums covering multiple reservations, and those payments may not have been tracked or accounted for on a reservation-by-reservation basis. In other instances, travelers may have shortened their stays or not appeared at all. And in still other instances, the hotel may have made a clerical error.

¶7.     On December 29, 2011, the State of Mississippi filed a complaint against the OTCs and alleged that the OTCs had failed and continued to fail to remit the full and proper amounts of taxes imposed under Mississippi's Sales Tax Law. *See* Miss. Code Ann. §§ 27-65-1 to -111 (Rev. 2017). The State alleged that the OTCs were required to collect and remit 7 percent sales tax for each retail rental of a hotel room to consumers based on the gross amount paid by the consumer, as opposed to the net rate. The State further alleged that the OTCs had been unlawfully keeping taxes collected under the authority of local and private law. The State sought declaratory judgment and injunctive relief and alleged violations of the Mississippi Sales Tax Law and local tax laws, conversion, unjust enrichment, assumpsit for money had and received, joint enterprise liability, violations of Mississippi's Consumer Protection Act, and imposition of a constructive trust. The State additionally asked for damages in the form of penalties, interest, and attorneys' fees and requested punitive damages.

¶8.     On March 23, 2012, the OTCs filed a motion to dismiss the complaint for failure to state a claim or, in the alternative, for a more definite statement. On September 20, 2012, the trial court granted in part and denied in part the OTCs' motion. The trial court denied the OTCs' requests to dismiss each of the State's claims but minimally granted the OTCs' request for a more definite statement as it related to the specific local taxes the State alleged that the Defendants had not paid.

¶9.     On August 30, 2018, the OTCs filed a motion for involuntary dismissal for failure to prosecute. The OTCs argued that the State had taken no action in the litigation since February 2015 and was, therefore, subject to dismissal under Mississippi Rule of Civil Procedure 41(b).

¶10.    The State filed its Motion for Partial Summary Judgment on the Issue of Liability on September 7, 2018. The State requested partial summary judgment as to the liability of the OTCs under the Mississippi Sales Tax Law and local hotel sales tax laws, as well as under theories of conversion, unjust enrichment, and assumpsit for monies had and received. The State argued that the OTCs had failed to remit sales taxes equal to 7 percent of the gross income derived from the rental of hotel rooms and had failed to adhere to the similar requirements of local government hotel tax laws.

¶11.    The OTCs filed a cross-motion for summary judgment on November 9, 2018. The OTCs argued that, because they were not hotels, the tax statutes did not apply to them. They additionally argued that the common law claims rested on the false assumption that the tax statutes applied.

¶12.    On November 19, 2018, the parties entered into an agreed order in which the State stipulated "that its claims under the Sales Tax and Local Hotel Taxes for non-breakage transactions are limited to the recovery of said taxes on only the OTCs' markup and fees. The State's claims under the Sales Tax and Local Hotel Taxes for breakage transactions also seek the recovery of said taxes on the net rate collected by the OTCs."

¶13.    On December 12, 2018, the trial court denied the OTCs' motion for involuntary dismissal for failure to prosecute. On July 2, 2019, the trial court granted the State's motion for partial summary judgment on liability on all counts, finding that the "OTCs' failure to remit taxes of online sales of Mississippi hotel rooms owed under both the Mississippi Sales Tax Law, local hotel sales tax laws, and the actions of the OTCs (via breakage) of conversion, unjust enrichment, and assumpsit for monies had and received, resulted in loss of money to the State resulting in damages to the State." The trial court denied the OTCs' cross-motion for summary judgment.

¶14.    The trial court later issued an amended judgment that corrected its prior ruling by omitting language that referred to a stipulation by the parties. The trial court then granted the State's motion to compel the OTCs to produce updated transaction data.

¶15.    The OTCs produced updated transaction data to the State on November 13, 2019. The OTCs filed a Petition for Interlocutory Appeal by Permission with this Court. On November 22, 2019, the OTCs filed in this Court a motion to stay all trial proceedings pending the disposition of its petition for interlocutory appeal. This Court denied the petition for interlocutory appeal and dismissed as moot the motion to stay trial court proceedings.

7

¶16. Thereafter, the parties entered into a Stipulation as to Tax Amounts in which the parties stipulated that the total tax amounts that would be owed for non-breakage transactions through June 30, 2019, are $10,162,129.33.[3] The stipulation read that "the State's claims under the Sales Tax and Local Hotel Taxes for non-breakage transactions are limited to the recovery of said taxes only on the OTCs' markup and fees." The stipulation did not waive the State's right to seek interest and penalties or any of the OTCs' arguments in response.

¶17. The parties entered into a second stipulation related solely to the various components that may be owed in breakage transactions through June 30, 2019.[4] That stipulation stated that "the State's claims under Sales Tax and Local Hotel Taxes for breakage transactions also seek the recovery of said taxes based upon the net rate collected by the OTCs" in addition to the taxes on the OTCs' markup and fees. The parties further stipulated that

> The tax amounts for each of the component parts of the total charge for these breakage transactions, if owed, are as follows: 1) tax on Net Rate is $778,770.37; 2) tax on Tax Recovery Charge is $81,129.59; and 3) tax on [the OTCs'] Margin and/or Facilitation Fee and Service Fee is $202,753.10.

¶18. Because the parties had stipulated to the amount of taxes owed under the liability order, the only remaining legal issues to address were the issues of damages, penalties, and interest. The State next filed a motion for summary judgment on the issue of damages through June 30, 2019. In Mississippi, taxpayers who have failed to pay taxes are potentially

---

[3]The amount paid by the consumer minus the amount paid by the OTC to the hotel is the amount retained by the OTC. In standard transactions, the State contended that the OTC failed to pay taxes on the amount retained by the OTC.

[4]In breakage transactions, the State argues that the hotel did not collect from the OTC any amount paid by the consumer. Therefore, the State argues that the OTCs had failed to remit taxes on the total amount collected in the hotel room transaction.

8

liable for 1) the unpaid taxes; 2) interest; 3) failure-to-file penalties; and 4) a 300 percent penalty for the collection and failure to remit trust fund monies.[5]

¶19. On March 5, 2020, the OTCs filed a cross-motion for summary judgment on the issues of damages and moved for summary judgment on all remaining claims in the State's complaint. The OTCs argued that the trial court should not award penalties and interest because the parties were engaged in a good-faith dispute over the applicability of a hotel tax to online travel companies.

¶20. On May 4, 2020, the parties entered into a third stipulation related solely to calculation of interest that may be owed on the stipulated tax amounts referenced in the Stipulation as to Tax Amounts and the Second Stipulation as to Tax Amounts.

¶21. On August 5, 2020, the trial court granted the State's Opposition as it pertained to the question of subject matter jurisdiction and denied the OTCs' Cross-Motion for Summary Judgment on the Issue of Damages. Based on the stipulations, the trial court awarded unremitted taxes on non-breakage transactions in the amount of $10,162,129.32 and on breakage transactions in the amount of $1,062,653.06, for a total of $11,224,782.38.

¶22. Because the trial court found that the OTCs had benefitted from the retention of funds, thereby depriving the State of the benefit, the trial court found that interest was due. The trial court found that Mississippi law mandated that the "gross income" of taxable sales is the tax basis and that it was undisputed that the OTCs had collected the gross income for hotel room reservations but had only payed taxes on the lower wholesale amount. The trial court

---

[5]*See* Miss. Code Ann. §§ 27-65-31, -33(6), -39 (Rev. 2017 & Supp. 2022).

additionally applied a 300 percent penalty under Mississippi Code Section 27-65-31 (Rev. 2017) on all of the unremitted taxes, finding that the OTCs had failed to remit trust fund monies while implementing a process that made it appear that they were remitting proper taxes.

¶23. The total amount of past due taxes and penalties awarded was $44,899,129.52. Finally, the trial court held that the amount of interest that was due and the determination of fraud with intent to evade the law under Mississippi Code Section 27-65-39 (Rev. 2017) were issues that should be determined at trial. The trial court denied the State's Opposition on those two issues and granted the remainder of the motion.

¶24. On August 8, 2020, the OTCs filed a motion to reconsider the trial court's July 2, 2019, liability order. The OTCs argued that there had been a substantive change in the applicable law via the recently enacted Mississippi Marketplace Facilitator Act of 2020 (the Act). The Act defined a *marketplace facilitator* as

> any person who facilitates a retail sale by a seller by:
>
> (i) Listing or advertising for sale by the retailer in any forum, tangible personal property, services or digital goods that are subject to tax under Mississippi sales tax law; and
>
> (ii) Either directly or indirectly through agreements or arrangements with third parties collecting payment from the customer and transmitting that payment to the retailer regardless of whether the marketplace provider receives compensation or other consideration in exchange for its service.

Miss. Code Ann. § 27-67-3(n) (Supp. 2022). The OTCs argued that the Act for the first time obligated them to collect and remit taxes due and owing on the tangible personal property,

specified digital goods and services that are sold by third-parties on those online platforms. The OTCs additionally filed a motion to reconsider the summary judgment order on damages. The trial court denied both motions for reconsideration.

¶25. The trial proceeded on the two remaining issues: 1) whether the OTCs were subject to the 50 percent penalty under Mississippi Code Section 27-65-39; and 2) what stipulated amount of interest applied.

¶26. On July 12, 2021, the trial court found probative that the OTCs knew about Mississippi sales tax on hotel room transactions and had the sole responsibility of collecting money from the consumer up front, as merchant of record. The trial court found that the OTCs "made a conscious decision to not contact the [MDOR], the state attorney general, or anyone else. In doing so, the [OTCs] demonstrated intentional disregard of the tax laws of the State of Mississippi." The trial court also found intentional disregard in the OTCs' decision to continue to collect but not remit taxes to the State after the trial court's July 2019 order declaring the OTCs liable. Accordingly, the trial court assessed 50 percent penalties under Section 27-65-39 and declined to abate the penalties and interest applicable. The trial court additionally awarded interest, although the amount of interest awarded was unclear. In total, the trial court found the OTCs liable to the State in excess of $50 million.

¶27. The OTCs filed a Notice of Appeal in which they appealed the following orders and rulings:

1. The December 12, 2018, Order Denying OTCs' Motion for Involuntary Dismissal for Failure to Prosecute.

2. The July 2, 2019, Order Granting Partial Summary Judgment, as

11

amended on October 1, 2019.

3. The August 5, 2020, Order Denying Defendants' Cross Motion for Summary Judgment on the Issue of Damages.

4. The August 17, 2020, Order on Plaintiff's Motion for Summary Judgment on the Issue of Damages.

5. The September 22, 2020, Order Denying OTCs' Motion for Reconsideration.

6. The October 5, 2020, Order Denying Defendants' Motion to Reconsider Summary Judgment Orders.

7. The October 7, 2020, Bench Ruling Denying Defendant's Motion for Involuntary Dismissal Pursuant to Rule 41(b) of the Mississippi Rules of Civil Procedure.

## ISSUES PRESENTED

I. Whether the chancery court erred by ruling that the OTCs are subject to hotel sales taxes, both statewide and local.

II. Whether the chancery court erred by holding that the OTCs' fees are the "gross proceeds of hotels" or "gross income of hotels."

III. Whether the chancery court erred by holding that the State can use common law causes of action as alternative means to levy and collect tax monies alleged to be owed.

IV. Whether the chancery court erred by granting the State's claims for damages.

V. Whether the chancery court erred by granting interest and penalties.

VI. Whether the chancery court erred by finding that the OTCs knowingly and intentionally failed to remit collected taxes in "breakage" transactions.

## STANDARD OF REVIEW

¶28. This Court reviews the grant or denial of motions for summary judgment de novo.

*White v. Targa Downstream, LLC*, 358 So. 3d 627, 632 (Miss. 2023) (quoting *State ex rel. Watson v. Long Beach Harbor Resort, LLC*, 346 So. 3d 406, 409-10 (Miss. 2022)). Questions of statutory interpretation are also reviewed de novo. *Lee v. State Farm Auto. Ins. Co.*, 355 So. 3d 229, 231 (Miss. 2023) (citing *Rex Distrib. Co., Inc. v. Anheuser-Busch, LLC*, 271 So. 3d 445, 339 (Miss. 2019)). Additionally, "[i]t is well established that revenue laws are to be strictly construed against the taxing power and that all ambiguities or doubts should be resolved in favor of the taxpayer." *Miss. Dep't of Revenue v. Hotel & Rest. Supply*, 192 So. 3d 942, 946 (Miss. 2016) (alteration in original) (internal quotation marks omitted) (quoting *State Tax Comm'n v. Edmondson*, 196 So. 2d 873, 875 (Miss. 1967)).

## DISCUSSION

¶29. The OTCs raise multiple issues on appeal. This Court finds the first issue—whether the OTCs are subject to the tax levied against hotels in Section 27-65-23—to be dispositive, and therefore we need only discuss the OTCs' statutory liability under the state and local hotel tax laws.

### I. The OTCs are not subject to the tax levied against hotels.

#### A. *Legislative History of Hotel Taxes*

¶30. This Court finds probative the fact that the Legislature has consistently drawn a distinction between hotels and travel intermediaries. Prior to the enactment of Mississippi's sales tax laws, the state imposed a privilege tax on "persons pursuing trades, employments or professions, as a license to carry on the business." *Smith v. City of Vicksburg*, 54 Miss. 615, 619 (1877). In 1930, the Privilege Tax was amended to include "each person operating

13

a hotel . . . ." H.B. 517, 1930 Miss. Laws ch. 88, § 97.

¶31. Mississippi enacted its first sales tax law, the Emergency Revenue Act, in 1932. H.B. 328, Reg. Sess., 1932 Miss. Laws ch. 90, § 1. The Emergency Revenue Act imposed annual taxes upon every person engaged in certain, specified businesses within the State. Although hotels were not specifically named, it imposed sales taxes on businesses subject to the State's then-existing privilege tax, which included "each person operating a hotel . . . ." H.B. 660, Reg. Sess., 1932 Miss. Laws ch. 89, § 104.

¶32. In 1936, the Legislature amended the sales tax to state, "[u]pon every person engaging or continuing within this state in any of the following businesses: . . . hotels . . . there is likewise hereby levied and shall be collected a tax, on account of the business engaged in, equal to two per cent of the gross income of the business." H.B. 559, Reg. Sess., 1936 Miss. Laws ch. 158, § 6. Therefore, hotels were specifically included in the sales tax statute at that time.

¶33. Beginning in 1940, travel bureaus, tour agencies, and other travel organizations were specifically added as businesses subject to the privilege tax. H.B. 1137, Reg. Sess., 1940 Miss. Laws ch. 120, § 222. The OTCs refer to these businesses as "travel intermediaries." Four years later, in 1944, hotels were removed as a taxable business under the privilege tax; however, the travel bureaus, tour agencies and other travel organizations remained subject to the tax. H.B. 447, Reg. Sess., 1944 Miss. Law ch. 138, § 46. In addition, in 1944 the Sales Tax was amended to eliminate the provision that imposed sales tax on all businesses subject to the privilege tax. H.B. 364, Reg. Sess., 1944 Miss. Laws ch. 129, § 4. Therefore, hotels

were subject only to sales tax after that time. The travel intermediaries remained subject only to privilege tax.

¶34.    In 1964, the Legislature amended the privilege tax to clarify the definition of "travel bureaus or related travel agencies":

> The words "tour agency" and "travel bureau" used in the preceding paragraph shall be construed to mean any person, firm or corporation, engaged wholly or in part in the business of promoting, conducting, or putting on all-expense and partial all expense tours or travel parties. It shall also be construed to include any person, firm or corporation who is engaged in whole or in part in the business of selling steamship tickets or reservations, airline tickets or reservations, railroad tickets or reservations, motor coach tickets or reservations and/or any service such as hotel reservations . . . .

H.B. 577, Reg. Sess., 1964 Miss. Laws ch. 515, § 9650.[6]

¶35.    In 1978, the Legislature repealed the statewide privilege tax for travel intermediaries and instead provided for a local privilege tax on travel intermediaries. S.B. 2889, Reg. Sess., 1978 Miss. Laws ch. 474, §§ 2-3. The Legislature repealed the local privilege tax on travel intermediaries in 1998. S.B. 3086, Reg. Sess., 1998 Miss. Laws ch. 467, § 1.

### B.    Mississippi Hotel Tax

¶36.    The current version of the hotel tax in Section 27-65-23 states:

> Upon every person engaging or continuing in any of the following businesses or activities there is hereby levied, assessed and shall be collected a tax equal to seven percent (7%) of the gross income of the business, except as otherwise provided: . . . Hotels (as defined in Section 41-49-3), motels, tourist courts or camps, trailer parks[.]

In 2007, Section 27-65-23 was amended to state after the term "Hotels," the words "(as defined in Section 41-49-3)[.]" Miss. Code Ann. § 27-65-23 (Rev. 2008). The definition is

---

[6]This section was later recodified as Mississippi Code Section 27-15-59.

as follows:

> The term "hotel" shall mean and include an entity or individual *engaged in the business of furnishing or providing* one or more rooms intended or designed for dwelling, lodging or sleeping purposes that at any one time will accommodate transient guests *and that are known to the trade as such* and includes every building or other structure kept, used, maintained or advertised as, or held out to the public to be, a place where sleeping accommodations are supplied for pay or other consideration to transient guests regardless of the number of rooms, units, suites or cabins available . . . .

Miss. Code Ann. § 41-49-3 (emphasis added).

¶37. In 2020, the Legislature implemented the Marketplace Facilitator Act, which defined a marketplace facilitator as

> any person who facilitates a retail sale by a seller by:
>
> > (i) listing or advertising for sale by the retailer in any forum, tangible personal property, services or digital goods that are subject to tax under Mississippi sales tax law; and
> >
> > (ii) either directly or indirectly through agreements or arrangements with third parties collecting payment from the customer and transmitting that payment to the retailer regardless of whether the marketplace provider receives compensation or other consideration in exchange for its service.

Miss. Code Ann. § 27-67-3(n). "The Act requires marketplace facilitators . . . to collect and remit use tax on sales into Mississippi of taxable services, tangible personal property, and specified digital products when such sales exceed $250,000 in any consecutive 12-month period." Jeffrey Jackson, Mary Miller, Donald Campbell, et al., *Mississippi Practice Series: Encyclopedia of Mississippi Law* § 70:21 (2d ed.), Westlaw (database updated Oct. 2022) (citing Miss. Code Ann. § 27-67-3(j)). The OTCs contend that they are marketplace facilitators, and the formal notice posted by the MDOR supports this contention, stating that

16

"[m]arketplace facilitators subject to the provisions of this act may include but are not limited to: . . . [o]nline sales of hotel/motel stays[.]"[7]

¶38. The State alleges that the OTCs are *hotels* as defined in Section 41-49-3 and are therefore subject to the 7 percent tax levied against the gross income of hotels in Section 27-65-23. To be subject to the tax levied in Section 27-65-23, the OTCs at issue in this case must fit into one of the miscellaneous business categories listed in the statute. The OTCs are only alleged to be hotels under Section 27-65-23. For the OTCs to be hotels, they must (1) be "engaged in the business of furnishing or providing one or more rooms intended or designed for dwelling lodging or sleeping purposes" and (2) they must be "known to the trade as such[.]" Miss. Code Ann. § 41-49-3. This Court finds that the OTCs meet neither of these requirements and, therefore, are not subject to this tax.

¶39. This Court must first examine the nature of the OTCs' business to determine whether the OTCs furnish or provide rooms. In *Miss. Dep't of Revenue v. EKB, Inc.*, 348 So. 3d 968, 970-71 (Miss. 2022), this Court was tasked with determining whether the nature of a wedding photography business was to provide the service of wedding photography—a nontaxable activity—or was the sale of tangible personal property—a taxable activity under Mississippi Code Section 27-65-17(1)(a) (Supp. 2022). There, we held that the nature of the business was to provide the *service* of wedding photography, capturing the digital images and conveying them via a disk or a drive. *EKB*, 348 So. 3d at 970-71. Even though the

---

[7] Miss. Dep't of Revenue Sales & Use Tax, *Notice To Marketplace Facilitators* (June 25, 2020), https://www.dor.ms.gov/sites/default/files/News/72-20-04%20MARKET PLACE%20FACILITATORS.pdf.

photography business provided its customers with tangible drives or disks containing the digital photographs, those tangible items were "*incidental* to the nontaxable photography service being provided[.]" *Id.* at 971.

¶40.     The nature of the photography business was to provide the service of photography and the delivery of those photographs—a nontaxable activity—not the sale of the tangible disks or drives. *Id.* Similarly, the nature of the OTCs' business is to provide an intermediary service between hotels and customers. The OTCs do not furnish or provide rooms for their customers. Nor do they perform any of the functions necessary to manage and operate a hotel, such as cleaning, maintenance, room service, security, laundry or other guest services. Instead, the OTCs allow customers to search for, compare and reserve accommodations. While a customer may reserve a room through an OTC, it is the physical hotel that furnishes or provides a room for the customer when they arrive. The OTCs merely provide the services that allow customers to compare hotels and reserve rooms for future use. Thus, the OTCs fail to meet the first requirement of being a hotel.[8]

¶41.     Though the fact that the OTCs do not furnish or provide rooms is dispositive in determining whether they are hotels as statutorily defined, we note that they fail to meet the second requirement as well—whether they are known to the trade as hotels. It appears very

---

[8]Numerous other jurisdictions, when faced with a similar question—whether OTCs could be taxed as hotels—concluded that OTCs were not hotels and, therefore, not subject to their own jurisdiction's tax on hotels. *See Vill. of Bedford Park v. Expedia, Inc.*, 876 F.3d 296, 305 (7th Cir. 2017); *City of Columbus, Ohio v. Hotels.com, LP*, 693 F.3d 642, 649-50 (6th Cir. 2012); *Lopinto v. Expedia, Inc. (WA)*, 335 So. 3d 432, 443 (La. Ct. App. 2021); *City of Birmingham v. Orbitz, LLC*, 93 So. 3d 932, 936 (Ala. 2012); *Alachua Cnty. v. Expedia, Inc.*, 175 So. 3d 730, 733 (Fla. 2015).

18

clearly from the record that they are not. Along with their cross-motion for summary judgment on the issue of liability, the OTCs submitted the affidavit of Chekitan S. Dev, Ph.D., a tenured professor at Cornell University's School of Hotel Administration who was "associated with the hotel business for over 39 years." The affidavit stated that "the OTCs involved in this matter do not own, operate, or control hotels or rooms in hotels. The OTCs are not known in the travel industry or the hospitality industry as hotels." The OTCs elicited the same testimony from numerous other witnesses as well.[9] The State did not address these unequivocal statements and instead relied wholly on the Mississippi Department of Revenue Rules, which state that "[a]dvertising for rent to the general public, whether by the owner of the property or a third party, qualifies as being 'known to the trade as such.'" 35 Miss. Admin. Code Pt. IV, R. 5.01(201) (amended Sept. 28, 2017).

¶42. "[I]n *King v. Mississippi Military Department*[, 245 So. 3d 404 (Miss. 2018)], this Court abandoned its 'old standard of review giving deference to agency interpretations of statutes' and established that we now will conduct de novo review without giving such deference." *EKB*, 348 So. 3d at 970 (internal quotation marks omitted) (quoting *HWCC-Tunica, Inc. v. Miss. Dep't of Revenue*, 296 So. 3d 668, 673 (Miss. 2020)). In conducting

---

[9]The affidavit of Mark Koehler—the Senior Vice President for Priceline.com—stated that "Priceline.com has never been known in the travel industry or hospitality industry as a hotel." Rachel Graham—Vice President for Expedia Group, Inc.—stated in her affidavit that "the Expedia Group Companies are not known, and have never been known, as a hotel by people in the travel industry or the hospitality industry." Lesley Harris—Vice President Global Service Delivery for Sabre Hospitality Solutions and former Vice President Global Hotels & Support for Travelocity.com LP N/K/A TVL LP—stated in her affidavit that "[b]ased on my fourteen (14) years of experience in the travel industry, Travelocity was never known in either the travel industry or the hospitality industry as a hotel."

this de novo review, this Court finds that, while a factor to consider, in the present case, advertising alone is insufficient to prove that an OTC is known to the trade as a hotel. The OTCs introduced evidence to support their contention that they are not known to the trade as hotels. Testimony from individuals ensconced in the travel and hospitality industries denying that OTCs are known to the trade as hotels certainly carries significant evidentiary weight. Furthermore, any doubt as to tax liability is resolved in favor of the taxpayer. *Id.* Therefore, we hold that the OTCs are not known to the trade as hotels.

¶43.    Presiding Justice King's dissent mirrors the argument of the State: it attempts to sidestep the statutory definition of *hotel* by emphasizing that the transaction that occurs when a customer reserves accommodations at a hotel through one of the OTCs constitutes a *sale* as defined by Mississippi Code Section 27-65-3(f) (Rev. 2017).[10] The State further argues that the OTCs are engaged in the business of hotels under the statute because this transaction constitutes a sale of a hotel room and the Sales Tax applies to "every person engaging or continuing in . . . the [business of]. . .[h]otels[.]" Miss. Code Ann. § 27-65-23. But the State and, likewise, the dissent, miss the mark. The issue before this Court is the interpretation of Section 27-65-23 and Section 41-49-3. The State argues that the OTCs are subject to the hotel tax under Section 27-65-23. Therefore, the OTCs must fit the definition of one of the enumerated miscellaneous businesses in Section 27-65-23. *See EKB*, 348 So. 3d at 973 ("In Mississippi, nonsales business activities are not subject to tax unless expressly enumerated

---

[10] "'Sale' or 'sales' includes the barter or exchange of property as well as the sale thereof for money or other consideration, and every closed transaction by which the title to taxable property passes shall constitute a taxable event." Miss. Code Ann. § 27-65-3(f).

20

in Mississippi Code Section 27-65-23."). The only business the OTCs are alleged to be engaged in are hotels, and, as previously discussed, the OTCs do not fit within the statutory definition of a hotel. Therefore, we reverse the chancery court's order granting partial summary judgment on the issue of liability under Section 27-65-23 and render judgment for the OTCs.

### C. Local Hotel Taxes

¶44. The State also alleges that the OTCs are liable for taxes under seventy-five different local hotel tax laws throughout the state. In its order granting partial summary judgment, the chancery court agreed with the State and found that the OTCs failed "to remit taxes of online sales of Mississippi hotel rooms owed under . . . local hotel sales tax laws[.]" The OTCs argue that the language of the local tax laws defining *hotels* fails to impose liability on the OTCs.

¶45. One of four different definitions for *hotel* is utilized by each of the local hotel tax laws. The definitions are as follows:

1. "Any *establishment* engaged in the business of furnishing or providing rooms intended for dwelling, lodging, or sleeping purposes to transient guests, where such establishment consists of [X] or more guest rooms/rental units."[11]

2. "Any *establishment* engaged in the business of furnishing or providing rooms . . . which are known to the trade as such . . . ."[12]

---

[11]H.B. 1672, Reg. Sess., 1996 Miss. Laws ch. 956, § 1(a) (emphasis added).

[12]S.B. 3118, Reg. Sess. 1999 Miss. Laws ch. 945, § 1(f) (emphasis added).

21

3. "A *place of lodging* . . . known to the trade as such . . . ."[13]

4. "Any *establishment* engaged in furnishing or providing rooms intended or designed for dwelling, lodging, or sleeping purposes to transient guests."[14]

Though the language of the local hotel taxes varies, this Court finds that they all fail to encompass the OTCs in their definition of *hotel*. Much like Section 41-49-3, the local taxes define *hotels* as an establishment or place of lodging that furnishes or provides rooms to transient guests. As discussed above, the OTCs neither provide nor furnish rooms, they are not physical establishments or places of lodging, and they are not known to the trade as hotels. Therefore, we reverse the chancery court's order granting partial summary judgment on the issue of liability under the local hotel tax laws and render judgment for the OTCs.

## II. The State's remaining claims are based on the assumption that the OTCs are liable for the hotel taxes and, therefore, must fail.

¶46. In addition to finding the OTCs statutorily liable under both the state and local hotel taxes, the chancery court also held the OTCs were liable under the common law theories "of conversion, unjust enrichment, and assumpsit for monies had and received." The State based its common law claims on the presumption that the OTCs were liable for the hotel taxes and had not remitted those taxes to the State. Therefore, the State argued that the retention of the tax money by the OTCs, which rightfully belonged to the State, constituted conversion, unjust enrichment, and assumpsit for monies had and received. In holding that the OTCs are not subject to the hotel taxes, we also hold that the State's common law claims fail. The

---

[13]H.B. 1587, Reg. Sess., 2016 Miss. Laws ch. 824, § 1(c) (emphasis added).

[14]S.B. 3059, Reg. Sess., 2017 Miss. Laws ch. 1019, § 1(f) (emphasis added).

22

OTCs cannot be liable for conversion, unjust enrichment and assumpsit if the money was never owed to or belonged to the State to begin with. The Chief Justice's dissent mischaracterizes the fee charged by the OTCs as a windfall. It is simply a service charge. It is naive to think that inventing a tax for this fee will benefit the consumer. Any additional tax will simply be passed on and result in higher prices for the consumer. Therefore, we reverse the chancery court's grant of summary judgment on the issue of liability under the State's common law claims and render judgment for the OTCs.

¶47. Likewise, by finding that the OTCs are not liable for the hotel taxes, we also find that the chancery court erred by granting damages, penalties and interest to the State.[15] Therefore, we reverse the chancery court's grant of damages, penalties and interest and render judgment for the OTCs.

## CONCLUSION

¶48. The OTCs at issue in this case are not *hotels*, and thus are not subject to the tax levied against hotels in Section 27-65-23 or the seventy-five other local hotel taxes. This Court finds that the chancery court erred by holding the OTCs liable for the hotel taxes. We reverse the chancery court's order finding the OTCs liable and render judgment for the OTCs. By finding the OTCs not liable for the hotel taxes, we also reverse and render the chancery court's order granting damages, penalties and interest to the State.

¶49. **REVERSED AND RENDERED.**

---

[15]Actual damages based on the finding that the OTCs had failed to remit taxes were granted in the amount of $11,224,782.38. Penalties were also awarded, totaling $33,674,347.14. The chancellor also awarded interest, although the actual amount of interest awarded is unclear.

**COLEMAN, MAXWELL, BEAM AND ISHEE JJ., CONCUR. RANDOLPH, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND KING, P.JJ. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.; RANDOLPH, C.J., JOINS IN PART. GRIFFIS, J., NOT PARTICIPATING.**

**RANDOLPH, CHIEF JUSTICE, DISSENTING:**

¶50.    I dissent with the majority on the plain reading of the applicable statute. The Online Travel Companies (OTCs)  furnish and/or provide rooms per requests of guests of innumerable hotels. While I agree with the notion that it is not the Court's duty to impose taxes, the Court should not shirk its responsibility to interpret the words of a statute as written. What the legislature chose to tax was

> <u>any entity</u> . . . <u>engaged in the business of furnishing or providing one or more rooms intended for dwelling, lodging or sleeping purposes that</u> at any one time <u>will accommodate</u> transient <u>guests</u> and that are known to the trade as such <u>and includes every building</u> or other structure <u>kept, used, maintained or advertised as, or held out to the public to be, a place where sleeping accommodations are supplied for pay</u> or other consideration <u>to</u> transient <u>guests</u> regardless of the number of rooms, units, suites or cabins available . . . .

Miss. Code Ann. § 41-49-3 (Rev. 2023) (emphasis added). The only exclusion is nursing homes. While I agree that if one opened the Yellow Pages, one would not see a listing for an OTC hotel, those companies are judged by the language of the statute. If the Legislature had not defined hotels as it did in Section 41-49-3, today's outcome might be different.

¶51.    The OTCs argue that  the term *hotel* would exclude them from this duty to collect a tax, even though they held out to the public that they are engaged in the business of furnishing and providing rooms, the very same public from which they collected 7 percent (Mississippi's rate of taxes). The trial court astutely found that

24

The OTCs collected MS sales tax on every merchant model booking. . . . The OTCs displayed the tax on their website to customers shopping for Mississippi hotel rooms as part of a line-item charge and presented the tax in their terms and conditions with customers. They then charged and collected taxes consistent with Mississippi's exact tax rates. This was performed hundreds of thousands of times over approximately twenty (20) years.

The trial court further found that

The OTCs do not dispute that they are not remitting taxes to the MDOR. . . . The defendant[s'] corporate and legal representatives testified about their tax exposure and liability, including the fact that the OTCs investigated such exposure and liability through their lawyers. . . . The OTCs made a conscious decision to not contact the Mississippi Department of Revenue, the state attorney general, or anyone else. In so doing, the defendants demonstrated intentional disregard of the tax laws of the State of Mississippi. . . . [Even after a July 2019 order] declaring the OTCs liable, the OTCs continued their business practices of collecting, but not remitting the taxes to the State.

¶52. The OTCs argument that they should not have to remit the collected tax monies to the State of Mississippi is absurd. "Our duty is to carefully review statutory language and apply its most reasonable interpretation and meaning to the facts of a particular case. Whether the Legislature intended that interpretation, we can only hope, but we will never know." *Pope v. Brock*, 912 So. 2d 935, 937 (Miss. 2005).

¶53. I fail to see why these companies should be unjustly enriched by more than $10,162,129.32, an amount the parties stipulated would be the tax amounts owed on non-breakage transactions if the learned trial court's judgments were upheld.

**KITCHENS AND KING, P.JJ., JOIN THIS OPINION.**

**KING, PRESIDING JUSTICE, DISSENTING:**

¶54. Because I would find that online travel companies (OTCs) engage in the business of selling hotel rooms and, therefore, are encompassed by the term *hotel* under Mississippi Code

25

Section 41-49-3, I respectfully dissent. I would affirm the trial court's order granting partial summary judgment on the issue of liability. Further, I would reverse the trial court's holding that the OTCs are liable under seventy-five local hotel tax laws and remand to determine whether the OTCs are liable under each local hotel law.

¶55. The State "carries the burden to establish that a particular transaction falls within its statutory power to tax." *Castigliola v. Miss. Dep't of Revenue*, 162 So. 3d 795, 799 (Miss. 2015) (citing *Stone v. Rogers*, 186 Miss. 53, 189 So. 810, 812 (1939)). This Court previously has stated that the logical starting point for determining the elements of a term within a tax statute "is with the two primary sources, the statute and the [MDOR Rules]." *Miss. State Tax Comm'n v. Vicksburg Terminal, Inc.*, 592 So. 2d 959, 962 (Miss. 1991).

¶56. The sales tax statute, Mississippi Code Section 27-65-23, provides that "[u]pon every person engaging or continuing in any of the following businesses or activities there is hereby levied, assessed and shall be collected a tax equal to seven percent (7%) of the gross income of the business, except as otherwise provided: . . . Hotels (as defined in Section 41-49-3) . . . ."[16] Miss. Code Ann. § 27-65-23 (Rev. 2017). Thus, Section 27-65-23 uses the term *person*, which is defined by statute as "*any* individual, firm, copartnership, joint venture, association, corporation, promoter of a temporary event, estate, trust or other group or combination acting as a unit, and includes the plural as well as the singular in number." Miss. Code Ann. § 27-65-3(c) (Rev. 2017) (emphasis added). Further, under Mississippi Code

---

[16]Similarly, the MDOR Rules provide that "[Section 27-65-23] levies a tax on the gross income of hotels, motels, tourist courts or camps and trailer parks." 35 Miss. Admin. Code Pt. IV, R. 5.01(101) (amended Sept. 28, 2017).

Section 27-65-9(1), the term "'[b]usiness' shall mean and include *all activities or acts engaged in (personal or corporate), for benefit or advantage, either direct or indirect, and not exempting subactivities in connection therewith.*" Miss. Code Ann. § 27-65-9(1) (Rev. 2017). Therefore, Mississippi's sales tax is broad, and it taxes any corporation that engages in any activities or acts of hotels.

¶57. Mississippi Code Section 41-49-3 defines *hotel* as the following:

> The term "hotel" shall mean and include any entity or individual engaged in the business of furnishing or providing one or more rooms intended or designed for dwelling, lodging or sleeping purposes that at any one time will accommodate transient guests and that are known to the trade as such and includes every building or other structure kept, used, maintained or advertised as, or held out to the public to be, a place where sleeping accommodations are supplied for pay or other consideration to transient guests regardless of the number of rooms, units, suites or cabins available . . . .

Miss. Code Ann. § 41-49-3 (Rev. 2023). I would find that the sales tax clearly encompasses the OTCs.

¶58. Section 41-49-3 "include[s] any entity . . . engaged in the business of furnishing or providing one or more rooms intended or designed for dwelling, lodging, or sleeping purposes that at any one time will accommodate transient guests . . . ." Miss. Code Ann. § 41-49-3. Merriam-Webster defines the term *furnish* as "supply, give." *Furnish*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/furnish (last visited June 27, 2023). When the consumer books a hotel room through an OTC, the consumer interacts only with the OTC from the point of booking the sale until the consumer checks into the brick-and-mortar hotel. In addition to charging the consumer's card and retaining the fee, the OTC handles reservation modifications, cancellations, refunds, and

27

customer service. The fundamental transaction of the OTCs and hotels is the same—the furnishing of hotel rooms.

¶59. The OTCs sell hotel rooms. The OTCs contract with hotels to obtain rooms at reduced rates, mark the prices up, and sell the hotel rooms to the public at higher retail rates. Further, the consumer pays the OTCs for the rooms and is guaranteed a room after the OTCs process the payment. I would find that the OTCs' transactions are fundamentally the retail sales of the rights to hotel stays in Mississippi.

¶60. The majority cites *Mississippi Department of Revenue v. EKB, Inc.*, in which this Court analyzed Mississippi Code Section 27-65-17(1)(a). Section 27-65-17(1)(a) authorized a "tax on the gross retails sales of 'every person engaging or continuing within this state in the business of selling any tangible personal property whatsoever . . . .'" *Miss. Dep't of Rev. v. EKB, Inc.*, 348 So. 3d 968, 971 (Miss. 2022) (quoting Miss. Code Ann. § 27-65-17(1)(a) (Rev. 2017)). This Court found that Section 27-65-17(1)(a) did not encompass a photography service because "[t]he tangible drive or disk is *incidental* to the nontaxable photography service being provided . . . ." *Id.* at 972. Yet *EKB* can be distinguished. Section 41-49-3 does not define *hotels* as the tangible, brick-and-mortar building; it defines *hotel* as entities "engaged in the business of furnishing or providing . . . rooms . . . ." Miss. Code Ann. § 41-49-3. The OTCs do exactly that.

¶61. Moreover, although this Court is no longer required to give deference to an agency's interpretation of statutes, the MDOR Rules state that "[a]dvertising for rent to the general public, whether by the owner of the property or a third party, qualifies as being 'known to

28

trade as such.'" 35 Miss. Admin. Code Pt. IV, R. 5.01(201) (amended Sept. 28, 2017).

Because the OTCs advertise hotel rooms for rent to the general public and because the

consumer has little to no interaction with the brick-and-mortar hotel in the sale transaction,

I would find that the OTCs are also known to the trade as hotels under Section 41-49-3.

¶62. Accordingly, I would find that the OTCs fall within the definition of *hotel* under the

sales tax law and would affirm the trial court's grant of partial summary judgment on the

issue of liability.

¶63. Additionally, I would reverse and remand the trial court's holding that the OTCs have

tax liability under the local hotel tax laws. Under Mississippi Code Section 27-65-23.1(1),

> Subject to the provisions of this section, for any tax levied and collected under the authority of a local and private law of the State of Mississippi ("local and private law"), that is levied or imposed on the gross proceeds or gross income from room rentals of hotels or motels and is collected and paid to the State Tax Commission in the same or similar manner that state sales taxes are collected and paid, the term "hotel" or "motel" also shall include (regardless of how such term is defined in the local and private law) any entity or individual engaged in the business of furnishing or providing one or more rooms intended or designed for dwelling, lodging or sleeping purposes that at any one time will accommodate transient guests and that are known to the trade as such and includes every building or other structure kept, used, maintained or advertised as, or held out to the public to be, a place where sleeping accommodations are supplied for pay or other consideration to transient guests regardless of the number of rooms, units, suites or cabins available, excluding nursing homes or institutions for the aged or infirm . . . .

Miss. Code Ann. § 27-65-23.1(1) (Rev. 2017). Section 27-65-23.1(2) provides that,

> If the definition of hotel or motel provided in the local and private law authorizing the tax does not include the entities described in subsection (1) of this section, then the provisions of subsection (1) of this section shall not apply unless the county board of supervisors or municipal governing authorities, as appropriate, authorized to levy the tax under the local and private law, adopts a resolution declaring their intention to include such entities for the purposes

29

of the tax.

Miss. Code Ann. § 27-65-23.1(2) (Rev. 2017).

¶64.    Because subsection 1 incorporates the definition of a hotel under the State sales tax, "regardless of how such term is defined in the local and private law," I would find that the OTCs also are liable under the local hotel laws that impose a tax "on the gross proceeds or gross income from room rentals of hotels or motels." Miss. Code Ann. § 27-65-23.1(1). In my opinion, the OTCs would also be liable for the local hotel laws that do not impose a tax on the gross income of room rentals of hotels but whose definitions would encompass the OTCs. Because the language of the local hotel taxes vary, I would reverse and remand on this issue to allow the trial court to determine whether the OTCs fall within each local hotel tax asserted.

**KITCHENS, P.J., JOINS THIS OPINION.  RANDOLPH, C.J., JOINS THIS OPINION IN PART.**

30